173 So. 264

## CITY OF MOBILE v. A. E. GIBSON.

### I Div. 266.

Court of Appeal of Alabama.

Jan. 12, 1937.

Rehearing Denied Feb. 2, 1937.

Outlaw & Seale and V. R. Jansen, all of Mobile, for appellant.

D. R. Coley, Jr., of Mobile, for appellee.

PER CURIAM.

Affirmed on authority of City of Mobile v. Rouse, post, p. 344, 173 So. 254.

RICE, Judge (dissenting).

The judgment appealed from in this case is affirmed by the majority, on the authority of the decision (and opinion) in the companion case of City of Mobile v. Pat Rouse, post, p. 344, 173 So. 254, this day decided.

While the constitutionality of the so-called Sanderson Act (Gen.Acts 1935, p. 746), referred to in the opinion of the majority of this court in the Pat Rouse Case, supra, was attacked on the ground that it was a local law passed under the guise of a general law, I do not find that the question thus raised was noticed by the opinion promulgated by my associates. It is sufficient that I say, that, upon the authority of decisions and opinions in the cases I cite, the act appears to me to be in all respects valid. Said cases are: Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231; State ex rel. Camp v. Herzberg, 224 Ala. 636, 141 So. 553; Wages v. State, 225 Ala. 2, 141 So. 707; Steber v. State, 229 Ala. 88, 155 So. 708; Cooper v. State ex rel. Hawkins, 226 Ala. 288, 147 So. 432.

But it is my opinion, that, whether or *not* the said Sanderson Act is a constitutional enactment, and whether or *not* it, in terms, authorized the adoption of the ordinance of the City of Mobile now under attack, said ordinance would, if *my* views are correct, be allowed to stand, under the authority of Code 1928, § 1992, authorizing municipal corporations to adopt ordinances not inconsistent with the laws of the state to "provide for the safety, *preserve the health,* promote the prosperity, improve * * * order, comfort, and convenience of the inhabitants of the municipality." (Italics supplied.)

My said views are that we *need* no "legislative declaration," as is contained in the said Sanderson Act, to inform us—if the fact is, indeed, essential to the validity of said ordinance here under discussion—that a "National Emergency" exists. What everybody else knows the courts are supposed to know. And, when we *see* hundreds, and are advised by *all* the agencies of publication that there are, literally, *millions* of our people who cannot find gainful employment, through national economic processes, why bother to *inform* us that there *does* exist a national emergency? So much for the Sanderson Act, and its bearing on the question before us.

The instant case and the Pat Rouse Case above referred to were submitted here together, as involving, essentially, the same question, i. e., whether or not the City of Mobile had the authority to adopt an ordinance, under the provisions of the said Sanderson Act, or under any other legal authorization, *fixing prices* to be charged for personal services—in the Rouse Case for "barber work," and in this case for "dry cleaning and pressing" work.

The question raised goes to the roots of the economic philosophy under which we, of the present generation, have grown up. Its correct answer, as I see it, marks a turning point in our social and economic thinking as a nation. I, of course, cannot here enter upon a disquisition as to the vast social and economic factors involved.

But it seems to me that, under the conditions that exist, and that we *know* exist, whether by virtue of the Sanderson Act, or by virtue of our ordinary powers of perception, we should hold that the City of Mobile was within its legal—aye, moral—rights when it promulgated the ordinance in question.

I shall not elaborate.

But scant attention was paid by my associates to the holding by the Supreme Court of the United States in the case of Nebbia v. People of the State of New York, 291 U.S. 502, 54 S.Ct. 505, 514, 78 L.Ed. 940, 89 A.L.R. 1469, and of the Supreme Court of Alabama in the case of Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295, 299, but the reasoning, the opinions,

and the decisions, in each of these cases seem to *me* to furnish the authority, and the *duty,* of our holding, in the instant case, that the ordinance of the City of Mobile here attacked was without defect.

There will always, doubtless, be two views—one, that a business, or occupation, to be "affected with a public interest," so as to be subject to the sort of regulation here attempted, must be one such as is described in the opinion by the majority in the Pat Rouse Case, supra; and the other, which *I* believe must come to prevail, either *now,* or *somewhere* this side of chaos, that an occupation, or business, to be subject to such regulation, need only be one "used in a manner to make it of public· consequence, and affect the community at large." Opinion by Mr. Justice Roberts, Nebbia v. People of New York, supra.

Manifestly, I take it, the businesses here involved are of such sort. I do not see how it can be held that the "cleaning of clothes" of the indiscriminate public, where said clothes, coming from all sorts and conditions of human bodies and homes, are necessarily intermingled in the process, is not a business affected with a vital public interest. Improperly conducted, said business offers vast opportunity for the spread of disease. Its control, it seems to me, is distinctly for the purpose of "preserving the health of the inhabitants of the municipality."

And similar, if not identical, reasoning leads to the same conclusion with reference to the work of "barbering."

The business in question being then seen to be subject to regulation in the interest of the *health* of the community, it appears that the "fixing of prices" at which the work may be done is within the police power of the city, provided, said prices so fixed are , not "arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt." · Franklin v. State ex rel. Alabama State Milk Control Board, supra. It being kept in mind that a *municipal ordinance* enacted under the police power is to be regarded as in effect a *statute of the state,* adopted under the power granted it by the state Legislature, and hence it is an act of the state within the Fourteenth Amendment to the Federal Constitution. North American Cold Storage Company v. City of Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195, 15 Ann. Cas. 276.

In these cases there is no contention that the prices fixed were "arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature (City) is (was) free to adopt." In other words, appellee's demurrers, which were sustained below, do not attack the reasonableness of the minimum prices fixed, but go only to the question as to whether the city had the authority to *fix any minimum charge.* I think, under the authorities I have cited hereinabove, which are due to control our action, it had such authority.

If the plea of our President that an "increasingly enlightened view" be taken of constitutional questions, is to become not a mere rhetorical play upon ringing phrases, but is to serve as a "call to arms" to all those of the Judiciary, both high and low, who cherish our institutions and love our form of government, it seems to me that we should mold our opinions, within, of course, the limits of our Constitutions, both State and Federal, to fit the times in which we live. A *part* of our liberty must inevitably, as *I* see it, be sacrificed, in order that the *essentials of that liberty* be preserved!

Our judicial eyes, yea, the eyes of society, must be turned, always within the horizon of the Constitutions, from the sunset of economic theories and a social philosophy which have served their day and *time,* to the sunrise of those newer, highly approved, but as yet untried, ideas of progressive democracy which offer the only visible hope of the salvation of our civilization!

Neither our Constitution nor the Federal Constitution, as I read them, forbid, in this case, nor, *I* believe, in *any* case, that we set the stamp of judicial approval upon the maxim "Salus populi; suprema lex esto."

I therefore dissent.