I agree with the majority opinion that the Alabama Interior Design Consumer Protection Act, Act No. 2001-660, Ala. Acts 2001 ("the Act"), is unconstitutional.
I write to express concern over the State's invocation ofWilliamson v. Lee Optical of Oklahoma, 348 U.S. 483,488, 75 S.Ct. 461, 99 L.Ed. 563 (1955):
 "The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."
The citizens of Alabama expect this Court to decide cases based on the timeless meaning of the United States Constitution and the Alabama Constitution of 1901, not merely on the basis that "[t]he day is gone" for a certain school of jurisprudence. Our oath of office as Justices requires this. However, I assure the State that this *Page 408 
Court did not declare the Act unconstitutional because the Justices think its provisions are "unwise, improvident, or out of harmony" with their own school of thought. This Court declared the Act unconstitutional because it violates Art. 1, §§ 6 and 13, Alabama Constitution of 1901.
In 1901, when the Alabama Constitution was drafted and ratified, economic liberties such as the liberty of contract, the right to enforce a contract, the right to own and to use property, and the right to enter into and to practice the common occupations were highly valued. United States Supreme Court cases such as Allgeyer v. Louisiana, 165 U.S. 578,17 S.Ct. 427, 41 L.Ed. 832 (1897) (concerning the right of a Louisiana shipper to insure his shipment with an out-of-state insurer not licensed to do business in Louisiana), andLochner v. New York, 198 U.S. 45, 25 S.Ct. 539,49 L.Ed. 937 (1905) (concerning the right of a bakery and bakery employees to contract to work more hours than allowed by New York law), upheld economic rights under the concept of the liberty of contract as guaranteed in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Although it is fashionable to speak of the "demise of theLochner era," and although later cases such asWilliamson, supra, and West Coast Hotel Co. v.Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937), give less protection to economic liberties and more deference to such state interests as health and safety, the Court has never denied that the liberty of contract is a constitutionally protected right.
The Alabama Constitution of 1901 was in the process of being drafted and ratified during the Allgeyer-Lochner era. Thomas Goode Jones, one of the primary drafters of that constitution, served as governor from 1890 to 1894. During that time an economic crisis led to a proposal to issue a moratorium on mortgage foreclosures. Governor Jones opposed that proposal, both because he thought it was unconstitutional and because he thought it was economically unwise.[9] The framers of the Alabama Constitution of 1901 protected economic liberties and other liberties in the Due Process Clause of Art. I, § 6 ("[He] shall not . . . be deprived of life, liberty, or property, except by due process of law"), using language similar to the Due Process Clauses of the Fifth andFourteenth Amendments to the United States Constitution. But they also protected economic liberties by adopting Art. I, § 1 ("That all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness."), § 13 ("That all courts shall be open; and that every person, for any injury done to him, in his lands, goods, person, and reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."), § 22 ("That no . . . law, impairing the obligations of contracts . . . shall be passed by the legislature. . . ."), [10] § 23 ("private property shall not be taken for, or applied to public use, unless just compensation be *Page 409 
first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner," thereby providing protection that goes beyond those found in the "takings" clause of the Fifth Amendment to the United States Constitution), § 35 ("That this sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when the government assumes other functions it is usurpation and oppression."), and § 36 ("That this enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate."). Concerning § 35, this Court stated in Churchill v. Board ofTrustees of University of Alabama in Birmingham,409 So.2d 1382, 1389 (Ala. 1982):
 "The prohibition of § 35 is not to be taken lightly. The `compelling need' criterion for governmental involvement in profit-making ventures mandates that each challenged activity undergo careful scrutiny on a case by case basis to avoid the constitutional `usurpation and oppression' admonition."
These provisions lead me to conclude that the framers of the Alabama Constitution of 1901 valued economic liberties as highly as did the United States Supreme Court Justices who decidedAllgeyer and Lochner and that they intended to enshrine in the Alabama Constitution strong protections for economic liberties. As can be seen from the provisions quoted above, the safeguards for economic liberties the framers placed in the Alabama Constitution of 1901 are much more extensive than those in the United States Constitution.
This Court has continued to recognize the value of economic liberties. In City of Mobile v. Rouse, 233 Ala. 622,173 So. 266 (1937), this Court invalidated a city ordinance prohibiting persons from charging lesser fees than the ordinance specified for certain personal services, in that case barber services and laundry services. The Court in Rouse
acknowledged that in Franklin v. State ex rel. AlabamaState Milk Control Board, 232 Ala. 637, 169 So. 295
(1936), it had upheld regulation of the milk industry, but it distinguished that case because, it reasoned, the milk industry was "affected `with a public interest.'" Rouse,233 Ala. at 625, 173 So. at 268. The Court stated:
 "Personal service can not become affected `with public interest' unless the service rendered is official in character, or is rendered in connection with a business `affected with public interest' or `devoted to a public purpose.'"
233 Ala. at 625, 173 So. at 268.
Rouse recognized both the liberty of contract and the right to engage in an occupation:
 "In Meyer v. State of Nebraska, [262 U.S. 390 (1923)], the Supreme Court of the United States, treating what is embraced in the term `liberty' as guaranteed by the Constitution, observed: `While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life,[11] to acquire useful knowledge, *Page 410 
to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' 262 U.S. 390, at page 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 29 A.L.R. 1446."
Rouse, 233 Ala. at 624, 173 So. at 268 (emphasis added).
Similarly, in Summers v. Adams Motor Co.,34 Ala.App. 319, 39 So.2d 300 (1949), the Court of Appeals upheld a liquidated-damages provision of a contract for the sale of an automobile. Summers, the purchaser, had agreed not to resell the car within six months without first offering to resell it to Adams Motor Company for its reasonable market value. The court stated:
 "Before the contract was executed the Motor Company was not obligated to sell or deliver the automobile that was sold to Mrs. Summers except on terms agreeable to the dealer. Neither was Mrs. Summers obligated to purchase that automobile from the Motor Company except on terms agreeable to her. It would be an unwarranted interference with their liberty of contract for this court to say that they could not enter into the agreement that was entered into. . . ."
34 Ala.App. at 323, 39 So.2d at 303.
In Juneman Electric, Inc. v. Cross, 414 So.2d 108, 112
(Ala.Civ.App. 1982), the Court of Civil Appeals stated: "The police power of the state enters into every contract, but the exercise of that power must be for an end which is in fact public, and the means must be reasonably adapted to the end to be achieved."
In Alabama Power Co. v. The Citizens of Alabama,740 So.2d 371 (Ala. 1999), this Court recognized that the United States Supreme Court has backed away from the strong emphasis on economic rights found in Lochner and other earlier cases. Justice See, writing for the Court, observed:
 "While this Court has not engaged in a campaign to strike down economic legislation, it has applied some of the less activist substantive-due-process formulations previously employed by the Supreme Court of the United States. For example, in Franklin v. State ex rel. Alabama State Milk Control Bd., 232 Ala. 637, 642-44, 169 So. 295, 299-300 (1936), this Court acknowledged the Supreme Court's pre-Lochner
`affected-with-the-public-interest' test in upholding a statute regulating the production of milk. (Citing Munn v. Illinois, 94 U.S. (4 Otto) 113, 130, 24 L.Ed. 77 (1876) (holding that a state law regulating rates charged by grain elevators did not violate the elevator operators' substantive-due-process rights because the statute was `affected with the public interest' and, thus, within the police power of the state)). In [Alabama State Federation of Labor v.] McAdory, 246 Ala. [1] at 12, 18 So.2d [810] at 818 [(1944)], this Court quoted the Supreme Court's post-Lochner means-end relation test in upholding certain provisions of a labor statute. (Citing Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (stating that legislation did not impinge on substantive-due-process rights as long as it was not `unreasonable, arbitrary or capricious' and `the *Page 411 
means selected [had] a real and substantial relation to the object sought to be attained'))."
740 So.2d at 380. While acknowledging that economic liberties are not protected as vigorously as they were during theLochner era, this Court nonetheless recognized that economic liberties still enjoy protection.
The State's argument that certification of interior designers[12] is necessary to ensure that designers are competent to choose safe products for use in interior design fails for two reasons: (1) federal and state commissions already exist to ensure that unsafe materials are not available for use in homes or businesses; and (2) there is no state requirement that homeowners or businesses retain any interior decorator or designer to decorate their homes or offices. If the public interest is not threatened by allowing homeowners and businesspersons to design their own houses and offices, it is difficult to understand how that interest is threatened by allowing them to retain interior designers who are not certified.
Not only are Lupo's rights to contract and to engage in her chosen occupation at stake in this case, but also the rights of the people of Alabama to contract with her. If a homeowner or businessperson wants to express himself by decorating his home or his office in a certain way, [13] and if that person believes Lupo can best provide the design that he desires, the State should not tell that person that he may not contract with Lupo merely because Lupo lacks state certification or an academic degree. Nor should this Court embrace the paternalistic notion that the average citizen is incapable of choosing a competent interior designer without the State's help. The economic liberty of contract remains a protected right in Alabama, especially in a field like interior design that involves expressive activity.
Accordingly, I concur with the majority opinion. I write separately only to emphasize that the rights infringed by the Act, which the majority declares unconstitutional, are even more extensive than stated in the majority opinion.
[9] Letter from R.A. Moseley, Jr., to Governor Thomas G. Jones (August 14, 1893); letter from Governor Thomas G. Jones to R.A. Moseley, Jr. (August 16, 1893) (cited and quoted in John Eidsmoe, Warrior, Statesman, Jurist for the South: The Life,Legacy and Law of Thomas Goode Jones 168-69 (Sprinkle Publications 2003)). For a general understanding of the convictions of the framers of the Constitution of 1901 concerning economic liberties, see Eidsmoe at 173-88.
[10] The term "liberty of contract" generally refers to the right to enter into a contract; the term "impairing the obligations of contracts" involves the state's preventing the enforcement of contracts already made.
[11] The Alabama Court of Civil Appeals has held that "[t]he right to engage in the profession of dentistry is a property right, and that right may be abrogated only by compliance with due process of law." Delavan v. Board of Dental Exam'rs ofAlabama, 620 So.2d 13, 16 (Ala.Civ.App. 1993); see alsoBoard of Dental Exam'rs of Alabama v. Townsley,668 So.2d 4, 5 (Ala.Civ.App. 1993). I recognize that the state may have a greater interest in regulating a profession than in regulating other occupations.
[12] The briefs of both parties discuss the differences between interior "design" and interior "decoration." In this writing I will use the term "interior design" without defining the differences between these terms or deciding which term best describes Lupo's work.
[13] Hornell Brewing Co. v. Brady, 819 F.Supp. 1227
(E.D.N.Y. 1993), implied that decoration of one's home is a means of expression. Hornell argued that the name of the alcoholic beverage it was marketing — "The Original Crazy Horse Malt Liquor" — was entitled to constitutional protection as freedom of expression above that ordinarily afforded commercial speech. The court "explicitly reject[ed] plaintiff's argument that use of the Crazy Horse name is actually the personal expression of Don Vultaggio, the Chairman and co-owner of Hornell Brewing, and therefore is entitled to the utmost constitutional protection. Plaintiff cannot seriously liken Vultaggio's freedom of expression in decorating his home in Southwestern style to the use of the name Crazy Horse on a nationally marketed alcoholic beverage." 819 F.Supp. at 1233
n. 7. See also Commonwealth v. Bricker, 542 Pa. 234,666 A.2d 257 (1995), in which the Pennsylvania Supreme Court held that Bricker's display of a flag in her home was constitutionally protected expression. The court stated: "[S]ome might argue that there are few forms of self-expression as personal and important as the manner in which we decorate our homes. . . . [T]he government must satisfy constitutional scrutiny before it can tell the citizens of this Commonwealth what pictures they may hang on their walls or what symbols they may display in the sanctity of their homes." Bricker,542 Pa. at 242, 666 A.2d at 261. *Page 412