CITY BANK FARMERS TRUST COMPANY, Appellant, *v.*
ARDLEA INCORPORATION et al., Respondents, Impleaded
with Others.

(Argued March 20, 1935; decided April 17, 1935.)

*George S. Mittendorf* and *Milton R. Friedman* for appellant.

*Herman C. Storck* for respondents.

HUBBS, J. The primary question presented on this appeal is whether an independent collateral agreement to pay a part of the amount secured by a bond and real property mortgage executed and delivered more than six years after the date of the original bond and mortgage, is within the purview of section 1083-b of the Civil Practice Act. The collateral agreement was executed and delivered on September 1, 1932. The Civil Practice Act, section 1083-a, provides that deficiency judgments on foreclosure of real property mortgages shall be limited to an amount equal to the difference between the amount payable upon the judgment and prior liens and the fair market value of the property covered by the mortgage, the fair market value to be fixed by the court.

In this action to foreclose a real property mortgage, Richard Croker, Jr., the maker of a collateral bond for $50,000, was made a party defendant and judgment demanded against him for any deficiency which might result for an amount not to exceed the amount of his collateral bond. A deficiency existed after the sale of the property. The plaintiff moved for judgment against the maker of the original bond and against the defendant Croker on the collateral bond. The court found that the fair market value of the property covered by the mortgage exceeded the amount of the judgment and denied the motion for a deficiency judgment.

The plaintiff contends that section 1083-b has no application under the facts of this case as to the defendant Croker, as the collateral bond executed by him was

executed long after the execution and delivery of the original bond and mortgage, and was not, therefore, a bond given to secure an "indebtedness secured by a mortgage on real property and which originated simultaneously with such mortgage and which is secured solely by such mortgage." (§ 1083-b.)

At the time section 1083-b was enacted it was deemed advisable by the Legislature to enact emergency legislation to relieve the strain on the real property market and to afford temporary relief to those indebted on bonds and real property mortgages. To accomplish that purpose, section 1077-a of the Civil Practice Act was passed, which suspended, during the period of the emergency specified in the act, the bringing of any actions to foreclose real property mortgages because of default in the payment of principal due on such mortgages. The new section 1077-b, passed at the same time, prevents the bringing of actions on bonds secured by real property mortgages because of default in payment of principal due on such bonds. "If the indebtedness originated or was originally contracted for simultaneously with such mortgage and is secured solely by such mortgage, or upon any guarantee of payment" of any such mortgage so long as an action to foreclose such mortgage is prevented by the provisions of section 1077-a, "so long as interest at the rate prescribed shall be paid."

The clear purpose of the Legislature was to prevent the foreclosure of real property mortgages for default in the payment of principal during the emergency period, also to prevent any actions on bonds given simultaneously with such mortgages and secured thereby and upon guaranties of payment of such mortgages or bonds given therewith.

Thus far the purpose of the Legislature seems clear. Did the Legislature intend, by the enactment of those sections, to limit their application to mortgages and bonds given therewith, or guaranties thereof? We think not.

It seems to us that the Legislature had in mind and intended to prevent not only the foreclosure of such mortgages and actions on bonds given therewith and guaranties thereof, but also to prevent actions upon guaranties of such mortgages and bonds, executed and delivered after the date of the execution or delivery of the original bond and mortgage.

We find such intent expressed in that part of section 1077-b which reads: " No action shall be maintainable or judgment be entered during such emergency upon any guarantee of payment of any share or part of any bond and/or mortgage * * * so long as interest at the rate prescribed shall be paid."

That language indicates an intent on the part of the Legislature to extend the beneficial provisions of these sections not only to the original makers of mortgages, bonds and guarantors thereof, but also to *any* guaranty of such mortgages and bonds, even though executed and delivered subsequent to the execution and delivery of an original bond and mortgage.

Sections 1083-a and 1083-b were enacted at the same time as sections 1077-a and 1077-b and as part of the general purpose of affording relief to distressed debtors.

The sections must be read together, having in mind the purpose of the emergency legislation and the object which it was enacted to accomplish. When so read, they confirm the interpretation which we place upon section 1077-b. Section 1083-a prevents a deficiency judgment when the court finds that the fair market value of the premises covered by the mortgage equals or exceeds the amount specified in the judgment and prior liens. Section 1083-b affords the same protection, in actions against makers or guarantors of bonds, " against any person or corporation directly or indirectly or contingently liable therefor." That language as in section 1077-b indicates the legislative intent to differentiate between actions on the original mortgages, bonds and guaranties thereof and

actions "against any person or corporation directly or indirectly or contingently liable therefor."

Those sections thus read afford protection not only to makers of original mortgages, bonds and guarantors thereof, but also to any party who is contingently liable as guarantor.   Such we believe to have been the intention of the Legislature as expressed in the statutes and manifestly within the spirit and purpose of the enactments.

The conclusion which we have reached was indicated in the opinion of the present chief judge in the case of *Klinke* v. *Samuels* (264 N. Y. 144).

The appellant contends that in view of the fact that there was a marked discrepancy between the affidavits presented on the part of appellant and the affidavits presented on the part of the respondents as to the fair and reasonable market value of the property, a triable issue was presented which should have been tried before the court or a referee.   Under the decision of this court in *New York Life Ins. Co.* v. *Guttag Corp.* (265 N. Y. 292) the position of appellant is correct, provided the appellant is in a position to avail itself of the alleged error. It does not contend that it was not served with the replying affidavits submitted on behalf of respondents, and it does not refer to any motion for a reference to determine the issue, although it was apprised, by the replying affidavits, of the very discrepancy as to value between its affidavits and those of respondents upon which it now relies.   It served an affidavit in reply to those served by the respondent, but did not suggest that it was not willing to have the question determined upon affidavits.   It apparently was content to rest its case upon the affidavits which it presented, without any demand for other opportunity to present proof or to interrogate the witnesses of its adversary, until the decision of the court, upon all the proof presented, had gone against its contention as to value.   The appellant was under obligation to advise the court of its unwilling-

ness to consent to a determination of the issue of fact upon the affidavits before the court and should not now be heard to complain that it has been denied relief for which it never, prior to determination of the issue, made a demand.

The order should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH and LOUGH-RAN, JJ., concur; FINCH, J., not sitting.

Judgment affirmed.