Shientag, J.
The action is for a declaratory judgment brought by the district supervising attendance officers employed by the defendant in its bureau of compulsory education, school census and child welfare. The object of the suit was to obtain an adjudication to the effect that the law requires that the salary schedule of the board of education, for district supervising attendance officers, shall prescribe salaries and increments not less than those prescribed in the defendant’s concurrent salary schedule for assistants to principal in day elementary schools. In essence the controversy turns on the interpretation of schedule 11 of section 883 of the Education Law of 1910 (as amd. by L. 1920, ch. 680, L. 1923, ch. 717).
For a proper understanding of the issues here involved, it is necessary to go into some detail concerning the history of the statute in controversy, its text and grammatical construction, the *579 purpose it sought to accomplish, and the practical construction it received at the hands of the governmental body charged with its administration. As Mr. Justice Cabdozo pointed out, “ the meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view.” (Panama Refining Co. v. Ryan, 293 U. S. 388, 439.)
In 1920, section 871-a (now renumbered § 2520) of the Education Law as added by chapter 612 of the Laws of 1920, and amended, provided for a bureau of compulsory education, school census and child welfare in the board of education of the city of New York, to consist of a director, an assistant director, a chief attendance officer, division supervising attendance officers, and such other supervisors, officers and employees as may be necessary. The section provided that appointments of attendance officers and district supervising attendance officers shall be made from eligible lists prepared in the same manner and by the same authority as are eligible lists for teachers, and that appointments to all other administrative and supervisory positions of higher grade in the bureau shall be made upon nomination of the board of superintendents from incumbents of supervisory positions of lower grades. All such appointments to the bureau are made subject to section 872 (now renumbered § 2523) of the Education Law governing the tenure of office of teachers.
Section 883 of the Education Law, as amended by chapter 680 of the Laws of 1920, prescribed minimum salary schedules for members of the teaching and supervising staffs of the board of education of the city of New York to serve in the elementary schools, high schools and training schools of the city. It did not prescribe minimum salaries or schedules for district superintendents, associate superintendents or the city superintendent, nor did it prescribe minimum salaries or schedules for attendance officers or supervisors in the bureau of compulsory education, school census and child welfare, hereinafter called the “ bureau of attendance ”.
Section 883 also authorized the board of education to adopt schedules and schedule conditions fixing the salaries of members of its teaching and supervising staffs at not less than those specified in the minimum schedules; the section also authorized the board of education to fix the compensation or salaries of all superintendents, examiners, directors, members of the attendance staff, etc. Among the minimum salary schedules prescribed by section 883 in 1920, was schedule A-4, dealing with *580 elementary schools, which is of, prime significance in this controversy: “ Schedule A-4. Assistants to principal (heads of departments): First year, not less than three thousand and four hundred dollars; annual increment, not less than one hundred dollars; number of annual increments, not less than two.”
Among the salary schedules adopted, pursuant to section 883, by the defendant in 1920 was the following:
“ Schedule Ij
“ Assistants to Principal in Day Elementary Schools
Year of service
as such Bates
1st ............... ......... $3400
2nd .............. ......... 3500
3rd............... ......... 3600"
As has heretofore been pointed out, section 883 of the Education Law did not, in 1920, prescribe any minimum salary schedules for the attendance bureau staff. However, pursuant to the authority granted by that section, the defendant adopted schedules for the attendance staff which included a schedule for district supervising attendance officers providing as follows:
“ Schedule Xb
“ District supervision attendance officers:
Year of service
as such Bates
1st ............... ......... $2574
2nd............... ......... 2680
3rd............... ......... 2808"
This variation in salaries as between the supervising staff of the attendance bureau and the assistants to principal in elementary schools appears to have been unsatisfactory. By chapter 717 of the Laws of 1923, the Legislature added schedule 11 to section 883 of the Education Law, which reads as follows (and this is the statute the construction of which is directly involved in the pending litigation): “ Schedule 11. The salaries and increments of supervising attendance officers of the bureau of compulsory education, school census and child welfare shall be not less than the salaries and increments of the various schedules of subdivisions A and B of this section as hereinafter respectively specified: Of district supervising attendance officer, the salaries and increments of schedule A-4; of division supervising attendance officer, the salaries and increments of schedule A-5; of chief attendance officer, the salaries and increments of *581 schedule B-4. Nor shall the salary of an assistant director of said bureau be less than that of a district superintendent, nor that of a director less than that of an associate superintendent. ’ ’
The subdivision A referred to in schedule 11, above set forth, pertained to positions in the elementary schools and those in subdivision B to high schools. Schedule A-4 (heretofore quoted) was for assistants to principal. Schedule A-5 was for heads of model schools, principals of schools for the deaf, for the crippled, and other specialized schools.
• It thus appears that, by virtue of this legislation enacted in 1923, the salaries and increments of supervisory officers of the attendance bureau were required to be not less than the salaries and increments of specified supervisory positions on the teaching staff. That certainly was true as of 1923.
In response to this legislation, the defendant, on August 29, 1923, adopted a resolution amending the salaries and salary schedules for the supervising staff of the bureau of attendance and gave for the first, second and third years of service, respectively, for supervising attendance officers: $3,400, $3,500 and $3,600. In other words, their salaries and increments were made identical with the existing schedule A-4 for assistants to principal in day elementary schools.
The situation was similarly dealt with in future years. In 1925, assistants to principal and district supervising attendance officers were treated on a parity and were given for three years of service, respectively, $3,600, $3,800 and $4,000. A further revision was made in 1927 which likewise equated assistants to principal in elementary schools with district supervising attendance officers and provided for increments of both groups over six years of service at the respective rates of $3,600, $3,804, $4,008, $4,212, $4,416 and $4,620.
By chapter 540 of the Laws of 1931, former section 889 of the Education Law was amended to provide that the board of education could not reduce the salary and increments of members of its teaching and supervising staff, including attendance bureau staff, below the salaries provided in its salary schedules and schedule conditions on file in the office of the State Commissioner of Education on March 5, 1931. Of course, by that time these salaries were much larger than those specified in schedule A-4 (Education Law, § 883, schedule A-4, cited earlier in the opinion). Though these salaries could not be decreased, they could be increased. Thus we find that as of July 1, 1945, the defendant board of education gave assistants to principal *582 and district supervising attendance officers a cost-of-living bonus of $350, so that the salary schedules (including the bonus) for the two groups continued to be identical. As late as December 1, 1946, the defendant increased the basic salaries of each of the two groups by $250 per annum, so that the salary schedules for both groups continued to be identical.
It appears, therefore, that from the time of the addition of schedule 11 to section 883 of the Education Law in 1923, and down to December 1, 1946, a complete parity of salaries had been maintained by the defendant board of education as between those paid to assistants to principal in elementary schools and those paid to district supervising attendance officers. Whatever increases were given to the first group by way of salaries, increments, bonus payments, were given to the second group — those with which we are here concerned. By chapter 7 of the Laws of 1947, the Legislature amended section 889-a of the Education Law (now § 3105) to give “ each teacher or other member of the teaching and supervising staff in any school district * * * an increase at the rate of at least three hundred dollars per annum, from and after January, nineteen hundred forty-seven, * * The defendant interpreted this to apply to both assistants to principal and supervising attendance officers. The same increase was granted to both, so that the salary schedules (including the $350 bonus for the two groups) continued to be identical, and from one to six years of service were: $4,500, $4,704, $4,908, $5,112, $5,316 and $5,520.
The Legislature, in 1947, passed chapter 778 of the Laws of 1947, known as the Feinberg Teachers ’ Salary Law (Education Law, §§ 3101-3105). Section 3102 prescribes a minimum salary schedule for all teachers in New York City regardless of whether they serve in elementary, junior high or senior high schools. That section contains a subdivision with two paragraphs which are relevant here. Paragraph (a) of subdivision 4 concerns the salary schedules of district supervising attendance officers, and, so far as relevant, reads as follows: “ 4. (a) Nothing herein contained shall modify or alter the requirements of the law in effect prior to the passage of this act in school districts having a population of over one million in respect to the schedules and schedule conditions fixing the salaries of * * * chief attendance officer and attendance staff * *
Paragraph (b) of subdivision 4 concerns the salary schedules of assistants to principal and, so far as relevant, reads as follows: “ (b) Irrespective of any other provision in this article the salary schedules of * * * assistants to principals *583 * * * in school districts having a population of over one million shall not be less than the salary schedules in effect on March fifth, nineteen hundred thirty-one.”
On May 20, 1947, the defendant, purporting to act in accordance with the new law, and for the first time since 1923, adopted two different salary schedules for assistants to principal and district supervising attendance officers effective July 1, 1947. Assistants to principal were scheduled for one to seven year's, respectively, at $4,680, $4,884, $5,088, $5,292, $5,496, $5,700 and $6,000. District supervising attendance officers, for from one to six years of service, respectively, were given: $4,500, $4,704, $4,908, $5,112, $5,316 and $5,520. Thus, for the first time in twenty-four years a salary schedule was adopted for district supervising attendance officers giving lower salaries and increments than the concurrent schedules for assistants to principal in day elementary schools. Clearly, there was nothing in the Feinberg Law which authorized such a distinction. On the contrary, the Feinberg Law, in paragraph (a) of subdivision 4 of section 3102 thereof (as above quoted) preserves the plaintiffs’ salary rights under former sections 883 and 889 of the Education Law.
The court at Special Term accepted the view that paragraph (a) of subdivision 4 of section 3102 of the Feinberg Law preserved the salary rights of the district supervising attendance . officers as they existed under sections 883 and 889 of the Education Law. It was, however, of the opinion that schedule 11 of former section 883, as continued by paragraph (a) of subdivision 4 of section 3102 of the Feinberg Law, did not entitle the district supervising attendance officers to the same increases in their salary schedule as the defendant had made in the salary schedule for assistants to principal effective July 1, 1947.
Special Term held that parity of salaries and increments was limited to salaries and increments provided in schedule A-4 as it existed in 1923, and not to increases made thereafter. (We are not here concerned with the effect of the so-called “ freezing ” statute of 1931 [Education Law, § 889; L. 1931, ch. 540].) With that conclusion we disagree.
The grammatical structure of schedule 11 of section 883 of the Education Law indicates that the Legislature intended permanently to equate the salaries of district supervising attendance officers to those of assistants to principal. In construing schedule 11, it should be recalled that section 883, of which it is a part, contained schedules, under subdivision A, for specific positions in the elementary schools, and under subdivision B for *584 specific positions in the high schools; but that section 883 contained no schedules for the positions of district superintendent or of associate superintendent. Schedule A-4, as has been pointed out, was the schedule for assistants to principal in elementary schools. When schedule A-4 was referred to, it was precisely as though the Legislature had said in so many words: “ the salaries and increments of assistants to principal in elementary schools.” Schedule A-4 was merely an abbreviation of the longer reference. Clearly, if the Legislature, instead of using the abbreviation “ Schedule A-4 ”, had used the longer reference, namely, had said that the salaries and increments of district supervising attendance officers, shall be not less than the salaries and increments of assistants to principal in elementary schools, there would be no doubt whatever as to the correctness of the appellants’ contentions. Moreover, it should be noted that the second sentence of schedule 11 is connected with the first sentence by the conjunction “ nor ”, and that the second sentence is parallel in structure with the first sentence. It is common grammatical knowledge that “ parallel structure in a number of successive sentences is useful when several facts are to be stated which áU. make to the same end or effect.”
The court below based its holding against the appellants on the proposition that in the second sentence of schedule 11 the salaries of director and assistant director of the attendance bureau were equated specifically with the salaries of district superintendent and associate superintendent, whereas in the first sentence of the schedule the salaries of the supervisory officers of the attendance bureau were equated not directly with supervisory teaching positions, but with the salaries and increments in certain specified schedules for supervisory teaching positions. It seems clear, however, that the only reason the Legislature did not use schedule numbers in the second sentence, equating the salaries of assistant director and director of the bureau of attendance with the salaries of district superintendent and associate superintendent, was that there were no schedules in section 883 for the latter positions, and hence they could not be referred to in abbreviated form.
The court below also apparently attached no significance to the parallel structure of the two sentences in schedule 11 and the use of the conjunction “ nor ” to connect them. This indicates that the two sentences were intended to have the same effect, i.e., in each case to equate the salary of a particular supervisory position on the attendance staff with the salary of a specified supervisory position on the teaching staff, whether *585 referred to by schedule number or title of the position. The learned court below evidently felt that each sentence of schedule 11 was to be read separately and literally and accordingly held that the first sentence meant that the salary of district supervising attendance officer was to be not less than the salaries then specified in schedule A-4. By separating the two sentences in schedule 11 and disregarding the conjunction ‘1 nor ’ ’ which joined the two, the court below arrived at a conclusion which destroyed the pattern of the schedule, which was to equate the salaries of supervisory positions on the attendance staff with the salaries of respective supervisory positions on the teaching staff deemed to be on the same levels. As Mr. Justice Cardozo pointed out, “ There is need to keep in view also the structure of the statute, and the relation, physical and logical, between its several parts.” (Duparquet Co. v. Evans, 297 U. S. 216, 218.) From the standpoint of the text of the statute and its grammatical construction, the appellants’ contention with respect to its interpretation is the correct one.
The purpose of the statute in controversy, in the light of conditions existing in 1923 when it was enacted, is plain: to equate the salaries of the supervisory positions on the attendance staff with the salaries of respective supervisory positions on the teaching staff, deemed to be on the same levels, and give them equal standing, responsibility and prestige. It would seem farfetched to assume that the Legislature intended to equate the salaries of assistant director of the attendance bureau and of director of the attendance bureau with those of the corresponding positions of district superintendent and associate superintendent, and did not intend to equate the salaries of district supervising attendance officers, and the others mentioned in schedule 11 of section 883, with the corresponding positions in the teaching supervisory staff. It is significant in this connection to note that the eligibility requirements for a license for the position of district supervising attendance officer are similar and practically equivalent to the eligibility requirements for a license for the position of assistant to principal in day elementary schools (Board of Education of City of New York, By-Laws, §§ 302, 327).
‘1 It is a familiar canon of interpretation that the several parts of a statute are to be read together in ascertaining the legislative intent and, further, that remedial legislation designed to correct a condition must be construed in the light of the circumstances and the law theretofore existing. (City Bank Farmers *586 Trust Co. v. Ardlea Incorporation, 267 N. Y. 224.) ” (Chase Nat. Bank v. Guardian Realties, Inc., 283 N. Y. 350, 361.)
In People ex rel. Savings Bank v. Butler (147 N. Y. 164, 167) the court said: “ Language which, when separated from the rest of the act, is thus plain and unambiguous may, when read in connection with the whole act, be thereby rendered ambiguous and the necessity for construction become for that reason quite apparent. Sometimes the language of some parts of a statute, when considered with reference to the ordinary meaning attributed to such language, is so clear and unambiguous that it would seem not to be open to any construction other than its plain, obvious meaning calls for, and yet, when read in connection with the whole act and in the light of what the real intention of the legislature must in the nature of things have been, the construction properly to be favored leads to a result which is different from what it otherwise would have been.”
Particularly pertinent is the, following language used in International Trust Co. v. American Loan & Trust Co. (62 Minn. 501, 503): “ It is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, and to separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascribed from the context, the nature of the subject matter treated of, and the purpose or intention of the parties who executed the contract, or the body which enacted or framed the statute or constitution.”
Not only do the text and grammatical construction and the purpose of the statute sustain the contentions of the appellants with respect thereto, but the validity of those contentions is strengthened and reinforced by the practical construction given to the statute by the board of education continuously for a period of twenty-four years after its enactment. There is something more than “ fortuity ” in the conduct of the board of education under the statute, and in the practical construction of the statute which that conduct evidences. On at least seven different occasions, when the defendant took affirmative action with respect to salary schedules for assistants to principal it took identical action with respect to salary schedules for district supervising attendance officers, so as to maintain the equality of the two salary schedules. It is an important principle of *587 statutory construction that, where there is an ambiguity in a statute, the practical construction given to it by the officers charged with its enforcement will be given considerable weight in its interpretation (Matter of Wexner v. State Retirement System, 272 App. Div. 185, affd. 297 N. Y. 810; Grimmer v. Tenement House Dept. of City of N. Y., 205 N. Y. 549, 550). Here there is little, if any, ambiguity in the statute; but, assuming there may be, such ambiguity is completely resolved by the practical construction placed upon the statute by the defendant board of education itself over a quarter of a century. We hold, therefore, that district supervising attendance officers are entitled to the same salaries and increments as those fixed by the defendant for assistants to principal in day elementary schools.
The judgment and order appealed from should therefore be reversed; the defendant’s motion to dismiss the complaint should be denied; and the plaintiffs’ motion for judgment on the pleadings should be granted, with costs to the appellants.
Peck, P. J., G-lennon and Van Voorhis, JJ., concur; Cohn, J., dissents and votes to affirm.
Judgment and order reversed, defendant’s motion to dismiss the complaint denied and plaintiffs’ motion for judgment on the pleadings granted, with costs to the appellants.