THOMAS, Judge.
Romulus Petrina (“the husband”) and Kimberly Petrina (“the wife”) executed a prenuptial agreement in February 2009, and they were married in March 2009. There are no children of the marriage. The wife is the owner and operator of A-l Employment Services, Inc. (“A-l Employment”). On March 13, 2014, the husband filed a complaint in the Lee Circuit Court seeking a divorce from the wife and a division of the marital assets and debts subject to the terms of the prenuptial agreement. The wife filed an answer to the husband’s complaint and a counterclaim seeking a divorce from the husband and a division of the marital assets and debts. A two-day trial began on January 26, 2015, and, on March 19, 2015, the circuit court entered a judgment (“the divorce judgment”) divorcing the parties and dividing the marital assets and debts. The divorce judgment provides, in pertinent part:
“(7) In considering the remaining relief requested by the [husband], the Court has carefully reviewed the evidence and the notes made by the Court during arguments. The Court finds:
“Prior to his marriage to the [wife], the [husband] was a 28 year-old Romanian-born illegal alien making approximately $10 per hour, or $20,800 per year. During his marriage to the [wife], the evidence established that the [husband] lived the life, and enjoyed the lifestyle, of a very wealthy man. The evidence also reveals that the [husband’s] accession to wealth was due entirely to his having married the [wife], who earns substantial income, especially as it compares to the [husband’s] earnings, and [the husband’s] earning capacity, at the time of the marriage. The [husband] con *1076 tributed 5% of the earnings of the parties during the marriage, according to the evidence. The evidence reveals that at the end of the marriage, a year after his separation from the [wife], the [husband] is now earning $67,500 per year, or $82.50 per hour. The Court finds that this incredible increase in income and earning potential is due to two factors.
“First, the [husband] is now a naturalized citizen of the United States, and will remain so after his divorce from the [wife]. The Court is of the opinion that American Citizenship is of inestimable value. Its benefits are capable of measurement, however. According to a 2012 study of the Migration Policy Institute, on average, a naturalized citizen earns 67% more than a non-citizen [see Madeleine Sumption <⅞ Sarah Flamm, Migration Policy Inst., The Economic Value of Citizenship for Immigrants in the United States, (September 2012))]. The [husband], as a 2015 United States citizen now earns over 300% more than he did as a 2009 illegal alien. However, [the husband’s] citizenship status alone—which resulted from his marriage to the [wife—] can only account for part of this difference in earnings, and earning potential.
“Second, the [husband] is now a valued commodity in the U.S. labor force, to wit: he is a skilled worker with multiple years of job experience. This fact was established by the evidence at trial, and the fact that [the husband] currently works in the same field as he worked during the marriage while working for his wife’s company, A-l Employment, Although the evidence confirms that the [husband] took full advantage of this employment opportunity at A-l Employment by working hard to develop his skills and abilities, it is axiomatic that the opportunity was presented to the [husband] by his wife, the founder and owner of A-l Employment. The same Migration Policy Institute study referred to above projects that a naturalized citizen is far less likely to ever live in poverty or be unemployed, as compared to a non-citizen. (And it should be noted that ‘non-citizen,’ as referred to in the afore-mentioned study, involved lawful permanent residents, as opposed to illegal residents.) The [husband] is likely to enjoy resulting future job security.
“The [husband’s] earning potential as an experienced American worker should result in increased net earnings of between one and two million dollars—if not more, over his working career, a benefit solely attributable to having been married to the [wife]. Normally, improvements in status such as the [husband] is enjoying would result from the attainment of a college degree, or from a decade or more of on-the-job training, and that for a natural born American. In sum, the [husband’s] marriage to the [wife] has brought upon him immeasurable benefits, both tangible and intangible.
“Having carefully considered all of the evidence at trial and the matters set forth herein, and taking account of all remaining assets and debts of the parties, the Court orders that the [wife] pay to the [husband], as his equitable share in the marital estate, the sum of $100,000.00, to be paid within 30-days.”
On April 20, 2015, the husband filed a timely postjudgment motion.[1] On May 26, *1077 2015, the husband filed an “amended and supplemental” postjudgment motion. On June 15, 2015, the circuit court entered orders denying the husband’s post-judgment motion and his amended post-judgment motion. On July 21, 2015, the husband filed a timely notice of appeal.[2]
The husband seeks our review of the property-settlement provision in the divorce judgment; specifically he seeks review of whether the circuit court erred by considering the husband’s citizenship status, by taking judicial notice of information gleaned from the September 2012 publication of the Migration Policy Institute (“the publication”) referenced in the divorce judgment, by failing to enforce the terms of the prenuptial agreement, and by failing to require the wife to refinance the marital residence in her name only.
“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust’ Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Id.”
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005).
Because we find the issue to be disposi-tive, we consider only whether the circuit court erred by awarding the husband $100,000 as a result of its express reliance on the publication to determine the husband’s earning potential as a naturalized citizen as opposed to his earning potential as a “non-citizen.” The husband argues that the information recited in the divorce judgment regarding his citizenship amounted to “data or information that is outside the record or which is not actually evidence in the case.” Our review of the transcript reveals that the husband is correct that the publication was neither mentioned nor offered into evidence at the trial; thus, the circuit court’s findings regarding the husband’s earning potential are without sufficient supporting evidence. Furthermore, we conclude that the findings are outside the realm of common knowledge and, therefore, not appropriate for judicial notice.
“Rule 201, Ala. R. Evid., allows a court to take judicial notice of certain facts, even ex mero motu. See Rule 201(b) (‘A court may take judicial notice whether requested or not.’).
“ ‘A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.’
“Rule 201(b), Ala. R. Evid. This rule has been explained as follows:
“‘Consistent with historic practice, a court is to dispense with the customary methods of proof “only in clear cases.” Fed.R.Evid. 201 advisory *1078 committee’s note. A court is to take judicial notice of adjudicative facts only when those facts are beyond reasonable dispute either because they , are generally known within the court’s territorial jurisdiction or because they can be accurately and readily determined by consulting sources that are acknowledged to be accurate. This limit upon judicial notice is consistent with historic Alabama law. See, e.g., Peebles v. Miley, 439 So.2d 137 (Ala.1983) (court judicially knows that great majority of collections are done on a contingent fee basis); Strother v. Strother, 355 So.2d 731 (Ala.Civ.App.1978) (judicial notice of increases in cost of living due to inflation); Mutual Bldg. & Loan Ass’n v. Moore, 232 Ala. 488, 169 So. 1 (1936) (facts found in reliable source).’
“Advisory Committee Notes, Rule 201, Ala. R. Evid. (emphasis added).
[[Image here]]
“However, Alabama courts have concluded that some matters are outside the general or common knowledge and, therefore, not appropriate for judicial notice. For example, our supreme court has refused to take judicial notice that an arsenal was a ‘sole hub’ for certain Army activities. See Westwind Techs., Inc. v. Jones, 925 So.2d 166, 171 (Ala. 2005) (‘Although the activities of Red-stone Arsenal in Madison County might well form a part of the common knowledge of every person of ordinary understanding and intelligence in Madison County, whether Redstone Arsenal represents the “sole hub of procurement and acquisitions” for the aviation branch of the United States Army would not be a matter susceptible of such common knowledge.’); see also Argo v. Walston, 885 So.2d 180, 183 (Ala.Civ.App.2003) (concluding that the trial court erred in determining the appropriate amount of damages when that determination was based in part on the judge’s personal knowledge about fishing ponds). Also, in Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 484, 213 So.2d 211, 217 (1968), our supreme court concluded that the reasonableness of certain bills for medical treatment and medication were matters ‘outside the realm of common knowledge.’ ”
B.H. v. R.E., 988 So.2d 565, 569-70 (Ala. Civ.App.2008). See also Independent Life Insurance Co. v. Carroll, 222 Ala. 34, 37, 130 So. 402, 405 (1930) (explaining that courts do not take judicial notice of facts merely because they may be ascertained by reference to dictionaries or other publications or of facts that cannot be known without, for example, expert testimony).
The circuit court erred by relying on information outside the record or, insofar as it did so, by taking judicial notice of information contained in the publication to award the husband $100,000. Because we reverse the award of $100,000 as the husband’s equitable share in the marital estate, we must also reverse the circuit court’s judgment regarding the property division in its entirety. Thus, we preter-mit consideration of the other issues presented by the husband. On remand, the circuit court is instructed to create an propei'ty division in compliance with the provisions of prenuptial agreement without consideration of any information outside the record.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The 30th day after the judgment was entered was Saturday, April 18, 2015. There *1077 fore the husband had until Monday, April 20, 2015 to file a postjudgment motion. See Rule 59(b), Ala. R. Civ. P., and Rule 6, Ala. R. Civ. P.

. This is the second time the parties have been before this court. See Ex parte Petrina, 204 So.3d 382 (Ala.Civ.App.2016).