186 So. 463

### TAYLOR v. STATE ex rel. ALABAMA STATE MILK CONTROL BOARD.

#### 3 Div. 271.

Supreme Court of Alabama.

Feb. 2, 1939.

Luther H. Waller and Ball & Ball, all of Montgomery, for appellant.

Chas. B. Aycock, of Birmingham, for appellee.

Gibson & Gibson, of Birmingham, amici curiæ.

FOSTER, Justice.

The purpose of this litigation is to test the continued effect of the Milk Control Act of July 9, 1935 (see page 204), and to determine whether, if it is still in effect, it serves to justify the board in extending a milk shed after it is once created, so as to include territory occupied by appellant, and to determine, if it does have that effect, whether it is applicable to the particular nature of business conducted by appellant, all as heretofore interpreted by this Court in Franklin v. State, 232 Ala. 637, 169 So. 295.

Section 25 of the Act provides that it shall apply during the emergency period, which is defined to be that which extends from the time when it takes effect to June 30, 1939. Section 1, with much detail declares the existence of the circumstances which gave rise to its enactment and the power supposed by the Legislature to exist to make it. The Franklin Case, supra, quotes that section in full, and it is not necessary to repeat it here.

Section 2 defines (insofar as we are here concerned) a *milk dealer* as one who purchases milk for purposes other than consumption or handles or sells milk; and it defines a distributor as one who purchases, etc., milk and bottles it after processing it for consumption, and sale at wholesale or retail, not to be consumed on the premises where sold; and a *producer* as one producing milk for commercial purposes, and has a health permit; and *milk shed* as a city and surrounding territory designated by the board as a natural marketing area; and *processor* as one who buys milk and processes it into products or by-products of milk but not for sale as fluid milk. *Consumer* as any person other than a milk dealer who purchases milk for fluid consumption. *Producer-Distributor* as a producer who distributes milk which he produces direct to stores or consumers.

Section 5 provides that the board shall designate natural marketing areas as milk sheds, but may at any time designate new or additional milk sheds, or combine two or more.

Section 19 confers on the board the right and duty to fix (a) the minimum prices within the milk shed to be paid by milk dealers to producers and others for milk in its various grades and uses; and (b) the minimum and/or maximum prices for milk sold by milk dealers to consumers except when consumed on the premises and by dealers to dealers; and (c) the amount of processing charges which may be included in transactions between dealers.

In 1935 the board created a milk shed known as zone one, embracing an area with a six mile radius from Court Square fountain in Montgomery, and fixed minimum prices for milk there involved. In March 1938 the board set up an extension of this shed to include territory within a fifteen mile radius. Such additional territory was designated as zone two with a scale of prices differing from those in zone one.

This bill was filed by the board against appellant and charges that she is selling milk in zone two at less than the prescribed minimum prices. The prayer is for a temporary injunction pending the hearing enjoining her from violating the prescribed rule fixing such prices and for general relief. The cause was set down for hearing on the application for temporary injunction and on demurrer to the bill. The demurrer was overruled, and the application was heard on the bill and affidavits, and the court ordered the temporary injunction.

Later a motion to dissolve was made on the denials of the answer and for want of equity in the bill. This was overruled, and an appeal taken within thirty days from each of those decrees, and both are assigned as error.

The substance of the claim of appellant is that she is not subject to the prescriptions of the board as to zone two, by reason of the facts contained in the following excerpt from her affidavit: "For many years it has been my custom and is the custom of other people similarly situated in the neighborhood in which I live to sell milk to customers who come out from Montgomery and buy milk at the dairy. These people take advantage of the fact that in the spring and early summer when the grazing grass is plentiful cows begin to give more milk and consequently milk during those months is plentiful. During that period our customers can afford to buy milk in quantity lots of one or several gallons. These customers come out from the city, bring their own containers, help us fill the containers, and take the milk away with them to be consumed by them. * * * I am not a producer within the definition of the Hamner Act establishing the Alabama Milk Control Board. I do not operate under a permit from any Board of Health and am not required by law to operate under such a permit. I am not a milk dealer, do not conduct a hotel or restaurant or store, am not a distributor, a processor, producer-distributor, wholesale producer nor do I come within the description of any of those persons affected by the Act. I do not make it a habit to solicit the sale of milk. My customers get milk from me by reason of their own request and initiative. I do not have a milk wagon, and do not advertise. My customers furnish their own containers and I do not bottle or sell any milk by delivery."

There was also an affidavit tending to show that there was no emergency in the milk industry when the Act was approved, and that there has not been since then.

The points insisted on are (1) that there has been no such emergency during that period which justifies the Act, or its continuing effect. (2) That the board had no authority under the Act to extend a milk shed so as to include a second zone. (3) That appellant was not subject to the regulations of the board, since her business is not such as to come within the terms of the Act.

1. Is the Act ineffective because there was and is no such emergency in the industry as to justify it? The case of Mutual B. & L. Ass'n v. Moore, 232 Ala. 488, 169 So. 1, is relied on to the conclusion that an emergency is the only circumstance which confers the power on the legislature to enact such a law, and that we will take judicial knowledge aided by the affidavit of Mr. Duggar that it has not existed and does not now do so. The subject was likewise treated in Birmingham Trust & Savings Co. v. Joseph, 234 Ala. 271, 175 So. 275.

But in those cases the Act in question has no constitutional basis on which to stand except a nation wide economic depression which was sufficient to quicken the police power of the State.

We have analyzed the Act here in question carefully to determine whether the nation wide economic depression creating an emergency with which we were dealing to justify that act is the controlling element which justifies the Milk Act here in question. We do not find it to be so dependent, but upon other features of the State's police power.

In the Franklin Case, supra, this Court referred to the finding by the Legislature of an emergency, but the line of argument in it and in the case of Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, shows that the exercise of the police power in that respect was sustained because the milk industry was affected with a public interest, and that the welfare of the people depended upon an ample supply of it in wholesome condition, so that the public was interested in the ability of the industry to function and to supply an ample amount of wholesome milk at prices reasonable to those who produce and handle the product and also to the consuming public. Justice Roberts elaborates this principle at great length, freely quoted in our Franklin Case, supra.

We do not think it is necessary to consider the question of the continuance of the depression as sufficient to create a continuing emergency as a justification for the Act. We therefore think that the Act is now and has continued to be operative as it was when the Franklin Case, supra, was decided, and for the reasons there so fully stated.

■■ 2. Authority of the board to extend a milk shed. We think appellant's contention is hypercritical. The language of section 5, to which we have referred, was in our opinion sufficient to justify the conclusion that the board was thereby authorized to extend a shed and divide it into zones with different prices fixed for each. The power to create milk sheds and alter and rearrange them and make new ones is continuing throughout the period of its operation.

■ 3. Was the business of this appellant subject to the prices fixed by the board? That question is to be determined by the provisions of section 19 of the Act in the light of the definitions contained in section 2, and the nature of her business. As we have said section 19 authorizes the board to fix prices of milk sold (a) by any one to dealers or (b) by dealers or stores to any one except for consumption on the premises.

Appellant contends that she should not be classified as a dealer, although a dealer is defined as one who not only purchases milk for purposes other than consumption, but also as one who handles or sells milk; and a producer is also defined as one who produces milk for commercial purposes under a health permit, intending thereby to classify one who produces from one who purchases or otherwise handles or sells milk.

If by the definition of a dealer it was intended to include a producer who sells his own product to a consumer, there would be no occasion to classify separately one who does that. The Act does not expressly authorize the fixation of the prices charged by a producer who sells to consumers, and he is separately classed from a dealer who sells. If the Act intended to authorize price fixation applicable to all persons who sell milk for any purpose, the elaborate details of sections 2 and 19 would be wholly useless. True, a producer is defined to be one who operates under a permit from the health board, but she asserts that she is not subject to such requirement. So also a producer-distributor is defined as a person who operates under a permit. Just why the definition of a producer includes the provision for a health permit is not clear. But it is significant that there is no express authority to fix minimum prices at which a producer shall sell to a consumer.

If appellant operated under a health permit her status under the Act would be exact. But she declares in her affidavit that she has no such permit, and that her operations are such as that she does not need one. We will not inquire into that claim.

Upon a consideration of the entire structure of the Act it is apparent to us that it was not intended to authorize the fixation of a minimum price at which one who produces his milk must sell it to consumers who come to his own door and solicit its purchase and furnish their own containers, and aid in the service minimizing the expense to the producer. That is the situation with which we are dealing and the circumstances to which we are holding the Act does not apply. Other circumstances not here involved are not now considered.

■ The bill merely alleges that appellant is now selling and distributing milk in zone number two of the Montgomery

milk shed at less than the lawful minimum prices fixed by the board. It does not show that she is otherwise subject to such prices. The demurrer goes to that defect and is well taken and should have been sustained. The appeal is within thirty days after that decree was rendered. Section 6079, Code, section 13, Code.

The appeal was also justified under section 8307, Code, from the decree ordering a temporary injunction.. That provision for appeal is only applicable where the application for injunction was set down for hearing under section 8304, Code, which was done here. Lee v. City of Birmingham, 221 Ala. 419, 128 So. 902; Morris v. Sartain, 224 Ala. 318, 140 So. 373; Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269; Id., 236 Ala. 301, 182 So. 54; City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550.

The facts set out in appellant's affidavit submitted on the hearing of the application for injunction are not denied by counter affidavits nor by the allegations of the bill. There is no occasion therefore to suppose they are not true as there set out. They show that her operations are not subject to the sale prices of milk fixed by the board.

Both decrees are therefore in our opinion erroneous, and they are reversed and one is here rendered sustaining the demurrer to the bill and dissolving the temporary injunction heretofore issued.

Reversed, rendered and remanded.

ANDERSON, C. J., concurs with the opinion.

GARDNER, J., concurs in the conclusion only.

BROWN, J., concurs in the result, and to the extent of the third proposition, as above numbered, but does not agree with those numbered one and two; and thinks that the Act is unconstitutional and void.

THOMAS, BOULDIN, and KNIGHT, JJ., think that the decree should be affirmed on account of the third point discussed in the opinion, that is, that appellant is a dealer as defined in the Act, and agree with the opinion on the first and second points discussed.

BROWN, Justice (dissenting).

On the decision of Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 646, 169 So. 295, I expressed the view that the Act in question was violative of the Constitution.

A re-examination of said Hamner Act No. 163, Acts 1935, pp. 204–220, convinces me that said law enacted as an emergency measure is in fact vicious class legislation, without a single provision for the benefit of the public. Its dominant purpose is to restrict production, fix prices for the benefit of a closed monopoly, and to prevent others from engaging in the business. The monopoly is limited to those already in business. These dominant purposes are inconsistent with the preamble which declares for greater production and supply.

To illustrate, Section 13 of the Act provides: "No license shall be granted to a person not engaged in business as a milk dealer, distributor or producer *at the time of taking effect of this Act except for the continuation of a now existing business,* and no license shall be granted to authorize the extension of an existing business by the operation of an additional plant or other new or additional facility, unless the Board is satisfied that the applicant is qualified by character, general fitness, experience, financial responsibility and equipment to properly conduct the proposed business." [Italics supplied.]

The Board is constituted, with one exception, of persons interested in existing business. Section 3.

The bond required of dealers and others is, not for the protection of the public, but for the protection of producers. The condition of the bond is "and shall be conditioned for the prompt payment of all amounts as and when due producers for milk sold by them to such licensee, during the license year." Section 12.

Said Section 13 confers on the Board arbitrary powers "in granting or revoking licenses" and in refusing to renew the same.

I therefore concur in that part of Justice Foster's opinion that holds appellant is not within the influence of the Act, but I am still of opinion that the Act impinges the bill of rights, securing to the citizen the liberty to contract. City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266, 111 A.L.R. 349.