1 So.2d 381

**THOMPSON v. ALABAMA STATE MILK CONTROL BOARD.**

**6 Div. 751.**

Supreme Court of Alabama.

March 27, 1941.

D. S. Satterwhite, of Birmingham, for appellant.

Chas. B. Aycock, of Birmingham, for appellee.

LIVINGSTON, Justice.

The appellant, J. A. Thompson, who does business as J. A. Thompson Dairy, filed his petition in the Circuit Court of Jefferson County, Alabama, seeking a writ of prohibition to prohibit the Alabama State Milk Control Board from conducting a hearing pursuant to a citation or complaint issued by said board directing or commanding appellant to appear before it and show cause why his license as a producer-distributor of milk should not be revoked for alleged violations of certain rules and regulations promulgated by said board and set out in the citation or complaint, and from otherwise enforcing a certain rule adopted by said board, or, in the alternative, for a writ of mandamus to compel said board to recuse itself in the cause then pending against appellant before said board.

The demurrers of the Alabama State Milk Control Board to appellant's petition were sustained. He refused to plead further, and his petition was dismissed; hence this appeal.

The present Alabama State Milk Control Board was created by a General Act of the Legislature of 1939, General Acts 1939, page 267. The Act of 1939 specifically repealed an Act of the Legislature of 1935, General Acts 1935, page 204, similar in most material aspects to the 1939 Act. The Act of 1935 was enacted as a so-called "emergency measure," and was limited to expire by its own terms on June 30, 1939. The constitutionality of the 1935 Act was passed upon by this court in the case of Franklin v. State, 232 Ala. 637, 169 So. 295, and insofar as there questioned its constitutionality was upheld. Again in the case of Taylor v. State, 237 Ala. 178, 186 So. 463, 465, this court, speaking through Mr. Justice Foster, said of the Milk Control Act of 1935, "We have analyzed the Act here in question carefully to determine whether the nation wide economic depression creating an emergency

with which we were dealing to justify that act is the controlling element which justifies the Milk Act here in question. We do not find it to be so dependent, but upon other features of the State's police power." We make these observations for historical purposes only. The validity of the legislative Act of 1939 itself is not questioned in the case before us.

 The present inquiry concerns the validity of certain rules and regulations promulgated and adopted by the Alabama State Milk Control Board on the 15th day of March, 1940, covering fair trade practices among licensees of the Milk Control Board. Rule No. 1 is as follows: "No licensee shall hereafter, without the written consent of the owner, use, sell, dispose of, buy or traffic in, or have possession of except for delivery to nearest Bottle Exchange, any milk crate or bottle, or wilfully mar, remove or change the name of ownership thereof or erase or change by remarking or otherwise any name or initial of any such owner so stamped, printed, burned into, marked or fastened upon such crate or bottle; provided, in no case shall any licensee retain in his or its possession any bottles or crates owned by another, for a longer period of time than seven (7) days; provided, however, this rule shall be inoperative in any milk shed where there is no bottle exchange or other facility for the exchange of bottles and crates among licensees."

It is contended by appellant that there is no authorization in the present act for the adoption of Rule No. 1. We may concede that the legislative mandate for the adoption of this rule must be found, if it exists, within the confines of the act itself.

The facts, policy and application of the act, set forth in section 1, are declared matters of legislative determination. Section 1 reads as follows: "It is hereby declared that milk is a necessary article of food for human consumption; that the production and maintenance of an adequate supply of healthful milk of proper chemical and physical content, free from contamination, is vital to the public health and welfare, and that the production, transportation, processing, storage, distribution and sale of milk, in the State of Alabama, is an industry affecting the public health and interest; that unfair, unjust, destructive and demoralizing trade practices have been and are now being carried on in the production, marketing, sale, processing and the distribution of milk, which constitute a constant menace to the health and welfare of the inhabitants of this State and tends to undermine sanitary regulations and standards of content and purity, that health regulations alone are insufficient to safeguard the consuming public from future inadequacy of a supply of this necessary commodity; that it is the policy of this State to promote, foster and encourage the intelligent production and orderly marketing of commodities necessary to its citizens, including milk, and to stabilize marketing of such commodities; that fluid milk is a perishable commodity easily contaminated with harmful bacteria, which cannot be stored for any great length of time, and which must be produced and distributed fresh daily, which supply cannot be regulated from day to day, but, due to natural and seasonal conditions fluctuates from day to day; that this surplus of milk, though necessary and unavoidable, unless regulated tends to undermine and destroy the fluid milk industry; that investigation and experience has shown that, due to the nature of milk and the conditions surrounding its production and marketing, that unless the producers, distributors and others engaged in the marketing of milk are guaranteed and insured a reasonable profit on milk, that both the supply and quality of milk are affected thereby to the detriment of and against the best interest of the citizens of this State whose health and well being are vitally affected thereby; that where no supervision and regulation is provided for the orderly marketing of milk, past experiences has shown that in flush seasons of production, when surplus of milk is great and the price which producers and others are able to obtain for milk is below the cost of production, that oftimes milk strikes invade the market followed by bombings and bloodshed, which oftimes prevents the consuming public from receiving an adequate supply of pure and wholesome milk necessary for its health and well being; that, due to the nature of milk and the conditions surrounding its production and marketing that the natural law of supply and demand has been found inadequate to protect the industry in this and other states of the United States, and that, in the public interest, it is necessary to provide state supervision and regulations of the fluid milk industry of this state."

Section 6 of the Act contains the following pertinent provisions: "The Milk Control Board is hereby vested with the powers, and it shall be its duty to supervise and regulate the fluid milk industry of the State of Alabama, including the production, production-distribution, transportation, manufacturing, storage, distribution, delivery, processing, and sale of milk in the State of Alabama, and to investigate and ascertain the use to which the distributor or processsor makes of all fluid milk purchased and to require the distributor or processor to pay for the said milk at the proper price, and to enforce all provisions of this Act." In section 7 we find the following: "The Board may adopt and enforce all rules and all orders necessary to carry out the provisions of this Act." And, in section 13, the following provisions: "The Milk Control Board may suspend or revoke a license already granted upon due notice and opportunity of hearing to the licensee when the Milk Control Board, after a hearing, has become convinced * * * (h) * * * the licensee has violated any lawful order, rule or regulation of the Milk Control Board."

Section 20 of the Act reads as follows: "Rules Of Fair Trade Practices. In addition to the general and special powers heretofore set out, the Milk Control Board shall have the power to make and promulgate reasonable rules and regulations covering fair trade practices as they pertain to the transaction of business among licensees under this Act, including (a) Preventing false or misleading advertisement. (b) The misrepresentation of producers, milk dealers, producer-distributors, stores, distributors to consumers or among themselves, as such, pertaining to the quality of their product or service or of facts which they know to be false and which are made with the intent to deceive or defraud consumer or other milk dealers, producers, distributors, producer-distributors or stores. (c) Or to prevent any Act or combination of acts, on the part of licensees, intended to make inoperative the provisions of this Act. (d) To prevent sales promotion schemes which combine the giving of prizes with the purchase of milk directly or indirectly, or which makes a lottery of the sale or [of] milk."

In our opinion the foregoing provisions are ample legislative authority for the Milk Control Board's promulgation and adoption of Rule No. 1, and that the rule itself is a reasonable regulation affecting the public interest.

This court, in the case of Scofield v. Perry Creamery Co., 234 Ala. 560, 176 So. 195, 196, speaking through Mr. Justice Bouldin, said:

"In the absence of some lawful arrangement for a common stock of bottles to be supplied and replenished by the several dairymen in fair proportions, the fact that in the course of business bottles of one dairyman came into the possession of another, gave no right to the latter to appropriate the bottles to his own use, even temporarily, without the consent of the owner.

"While the co-operative exchange plan is voluntary, and the injunction very properly carries no mandatory requirement in that regard, dairymen who undertake to join therein, but do not live up to it by the prompt return of bottles, and convert them to their own use, acquire a distinct advantage over those who live up to the exchange obligations."

As was pointed out in the case of People v. Nebbia, 262 N.Y. 259, 186 N.E. 694; Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, and in Franklin v. State, supra, regulations affecting the milk industry are important to those engaged in the industry as well as the public who use its products. That the matters regulated by Rule No. 1 touch the profits of those using bottles and crates in their milk business, and thereby affect the price paid by the consumer, can admit of no doubt in our mind. Nor can we say that the rule is arbitrary or unreasonable.

■ Appellant further insists that the Act of 1939 and Rule No. 1, supra, are invalid because they combine in the Alabama State Milk Control Board the functions of complainant, prosecutor and judge. This matter has been determined against the contention of appellant. Sections 22, 27 of Act of 1939, General Acts 1939, pages 286, 289; Federal Trade Comm. v. F. A. Martoccio Co., 8 Cir., 87 F.2d 561, and cases there cited.

■ Appellant assails the provisions of the act which would allow his competitors, members of the Milk Control Board, to sit in judgment on the question of the revocation of his license. The act itself provided for the personnel of the Board, their qualifications and the manner of their appoint-

ment, Section 3 of the Act; and their interest, if any, in the outcome of the proceeding is not sufficient to disqualify them. Their actions or orders are all subject to review by writ of certiorari filed in the circuit court of the county wherein such action or order was taken or made. Section 22 of the Act of 1939, supra.

Nor are we impressed by the contention of appellant that only one member of the Board was present to pass upon the matters involved in the citation to him. The act contains ample authority for permitting one member of the Board to hear and record the evidence in proceedings of this nature, and submit the same to all members of the Board for their final determination. We find no error in the record.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.