33 So.2d 11

ALABAMA STATE MILK CONTROL BOARD et al. v. GRAHAM.

I Div. 305.

Supreme Court of Alabama.

Dec. 18, 1947.·

A. A. Carmichael, Atty. Gen., MacDonald Gallion, Asst. Atty. Gen., and Chas. B. Aycock, of Birmingham, for appellants.

H. M. Aldridge, of Mobile, for appellee.

STAKELY, Justice.

This appeal is from a decree of the equity court overruling the demurrer to a bill in equity. The bill of complaint was filed by Ruffin J. Graham, doing business as Ruffin Graham Dairies against the Alabama State Milk Control Board, the individuals comprising the Alabama State Milk Control Board and J. B. Sanford, individually, and as Inspector for the Alabama State Milk Control Board. The bill of complaint in one aspect attacks and seeks injunctive relief, with damages, from "Official Order No. 161" made by the Alabama State Milk Control Board. A copy of this order was attached as an exhibit to the bill of complaint and made a part thereof. It will appear in the report of the case. In the other aspect of the bill of complaint, the complainant seeks relief under the Declaratory Judgments Act, Code 1940, Tit. 7, § 156 et seq.

The allegations of the bill in substance show the following: The complainant is and for many years has been a licensed owner and operator of a substantial dairy business in the County of Mobile, Alabama. Milk is by common knowledge and by legislative determination a highly perishable and contaminable product of vital necessity to the public and demanding immediate distribution after production. Complainant has built up a large clientele who demanded and received daily deliveries of milk until the prohibition of war time regulations both by O. D. T. and the Alabama State Milk Control Board. Upon the end of the war and O. D. T. complainant recommenced daily deliveries, a reasonable exercise of his business, and by such resumption of daily deliveries his volume of business very substantially increased until stopped by order of the Alabama State Milk Control Board No. 161. Under authority of the aforesaid order respondents on May 12, 1947, cited complainant to cease daily deliveries under threat of a revocation of his license or suffer a penal fine of $500. As a result complainant complied, with large losses resulting directly therefrom. Such losses are increasing daily, are irreparable and demand immediate relief. Protests and requests for relief to respondents have been ignored and refused and complainant is confronted with a choice of compliance with the order and insolvency or disobedience and punishment. Order 161 is alleged to be void and without authority of law upon various grounds, which we shall proceed to discuss. A justiciable controversy is alleged to exist.

I. In 1935, during a period of economic crisis, the legislature decided that the milk industry in the state needed supervision not only from the standpoint of the industry itself, but also from the standpoint of the consumer and the general public. It appears that various factors produced this result, as shown by the legislative determination contained in the Act of 1935. General Acts 1935, p. 204 et seq. For example there appeared to be a need of regulation and supervision of fluid milk as to content, processing and purity because the vital part fluid milk has in the public health. Also there appeared to be a need for control of marketing areas, distribution and fixing of prices in order to stabilize the industry. The legislative determination in the Act of 1935 was in large part readopted in the legislative determination in the Act of 1939. General Acts 1939, p. 267 et seq. In Taylor v. State, 237 Ala. 178, 186 So. 463, it was noted that while the nation-wide economic depression was sufficient to quicken the police power of the state and so sustain the Act of 1935, matters vital to the public health were also sufficient to justify that legislation. The foregoing legislative determination has been brought forward and now appears as § 205, Title 22, Code of 1940, from which we quote in part as follows.

"It is hereby declared that milk is a necessary article of food for human consumption: that the production and maintenance of an adequate supply of healthful milk of proper chemical and physical content, free from contamination, is vital to the public health and welfare, and that the production, transportation, processing, storage, distribution and sale of milk, in the State of Alabama, is an industry affecting the public health and interest; that unfair, unjust, destructive and demoralizing trade practices have been and are now being carried on in the production, marketing, sale, processing and distribution of milk, which constitute a constant menace to the health and welfare of the inhabitants of this state and tends to undermine sanitary regulations and standards of content and purity, that health regulations alone are insufficient to safeguard the consuming public from future inadequacy of a supply of this necessary commodity; that it is the policy of this state to promote, foster and encourage the intelligent production and orderly marketing of commodities necessary to its citizens, including milk, and to stabilize marketing of such commodities; that fluid milk is a perishable commodity easily contaminated with harmful bacteria, which cannot be stored for any great length of time, and which must be produced and distributed fresh daily, which supply cannot be regulated from day to day, but, due to natural and seasonal conditions fluctuates from day to day; that this surplus of milk, though necessary and unavoidable, unless

regulated tends to undermine and destroy the fluid milk industry; that investigation and experience has shown that, due to the nature of milk and the conditions surrounding its production and marketing, that unless the producers, distributors and others engaged in the marketing of milk are guaranteed and insured a reasonable profit on milk, that both the supply and quality of milk are affected thereby to the detriment of and against the best interest of the citizens of this state whose health and well being are vitally affected thereby; * * *."

It will be noted that the foregoing § 205 provides in substance that since fluid milk is a perishable commodity easily contaminated with harmful bacteria it cannot be stored for any great length of time and accordingly "must be produced and distributed fresh daily." Appellant insists that order No. 161 of the Alabama State Milk Control Board is contrary to the provisions of the statute because it requires "that all deliveries of fluid milk on retail routes be confined to an every other day basis to any one customer." It is argued that the order is at variance with the statute because it forbids the daily delivery of fluid milk to any one customer, that the word "daily" in the act is in no sense synonymous with "every other day" as provided in the order.

We think, however, that careful consideration of the order, including the definition contained therein, will show that it does not prohibit the daily delivery of fluid milk. On the contrary the order contemplates daily production and delivery of fluid milk. Under the order the dairyman must deliver his milk on the same day on which it is produced. It is true that a two days supply of milk is delivered but the milk which will be a supply for two days, was produced on the same day as the day of delivery. In other words customer A will receive on Monday a two days supply of milk produced on Monday, while customer B will receive a two days supply of milk on Tuesday produced on Tuesday. It seems to us that the saving in cost which this plan of delivery will produce, is obvious.

But it is argued that this plan makes the customer the storer and if a two day supply can be delivered at one time, a seven day supply or even a thirty day supply can be delivered at one time with resulting harmful effects. It is sufficient to say that we are not dealing with an order providing for delivery of a supply for seven days or longer, but only with an order providing for a delivery of a two day supply. There is nothing to show that any harmful effect on the milk has resulted from the plan contemplated in the order. The order is not contrary to the provisions of § 205, Title 22, Code of 1940.

■ II. Under § 207, Title 22, Code of 1940, it is provided that the "Alabama State Milk Control Board" shall "consist of five members * * * appointed by the governor of Alabama with the following qualifications: One person, who is a 'wholesale producer,' one person, who is a 'producer-distributor,' one person, who is a 'distributor,' one person, who is a 'consumer,' and who is not otherwise engaged in the milk business. One person as a member at large, which said person must not be engaged in the production, distribution, or sale of milk in any manner. * * *" It is charged that the Alabama Milk Control Board was illegally and improperly constituted because James F. Stoner, who qualified for the board as a producer-distributor was not a producer-distributor at the time of the adoption of the order nor had he been such for many months preceding the hearing at which the order was adopted. Of course the validity vel non of Order No. 161 is what is at stake in this proceeding and not the tenure of office of James F. Stoner. But it is claimed that the order is invalid because James F. Stoner was not legally qualified for the office. The validity of the order cannot be here questioned in this way because the authority of James F. Stoner to act as a member of the board cannot be attacked in the manner sought here to be done. Quo warranto or statutory contest is the proper method of attack. Hodges v. Board of Education of Geneva County, 245 Ala. 64, 16 So.2d 97.

■ III. It is charged that order No. 161 is violative of §§ 43 and 44 of the Constitution of 1901 in that the order contravenes § 205, Title 22, Code of 1940, with

the result that the Alabama State Milk Control Board has usurped to itself legislative powers. As we have already tried to point out, this is an incorrect position because the order is not violative of the act of the legislature. See also Alabama Public Service Commission et al. v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872. The further charge is made that the order is arbitrary and unreasonable and violative of the 5th and 14th Amendments to the Constitution of the United States and of §§ 1, 13 and 35 of the Constitution of 1901. In this connection, repeating again that the order is not contrary to the act, there is no need to reiterate what has been said in earlier decisions to show that the act of the legislature is valid. Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Taylor v. State, 237 Ala. 178, 186 So. 463; Thompson v. Alabama State Milk Control Board, 241 Ala. 100, 1 So.2d 381. See also Milk Commission et al. v. Dale County Dairies, Inc., et al., 145 Fla. 579, 200 So. 83.

■ It has seemed proper for us to discuss the case on the merits as a guide to further proceedings and to obviate, if possible, the necessity of another appeal. But despite what has been said, the decree overruling the demurrer must be affirmed. As pointed out the bill of complaint has two aspects. The demurrer is assigned in the following language:

"Now comes the respondents in the above styled cause separately and severally and separately and severally demur to the Bill of Complaint and each and every part, paragraph and aspect thereof, separately and severally, and for grounds of demurrer set down and assign the following, separately and severally: * * *."

The demurrer accordingly is in effect to the bill as a whole and not to any particular aspect of the bill. First Nat. Bank of Birmingham v. Bonner, 243 Ala. 597, 11 So.2d 348; Wells v. Wells, Ala.Sup., 32 So.2d 697. It follows that if any ground for relief, as pleaded, is sufficient, then the demurrer was properly overruled, even though other aspects are defective. Brad-

ford v. Fletcher, 248 Ala. 483, 28 So.2d 313; Whatley v. Whatley, 248 Ala. 430, 27 So.2d 877.

■ Here a declaratory judgment is sought in one aspect of the bill. Without passing upon or depending upon the recent act of the legislature approved October 9, 1947 amending the Declaratory Judgment Act, it is clear that when controversies arise in which the legality of actions of public officials or public agencies are challenged, it is in a field where declaratory judgments are favored even though no specific relief is sought. Donoghue v. Bunkley, 247 Ala. 423, 25 So. 2d 61; Morgan v. Board of School Com'rs. of Mobile County, 248 Ala. 22, 26 So.2d 108. Of course there must be a bona fide justiciable controversy and where no bona fide justiciable controversy is alleged, the demurrer should be sustained. Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692. But the test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention but whether he is entitled to a declaration of rights at all. Accordingly if he states the substance of a bona fide justiciable controversy, which should be settled, he states a cause of action for declaratory judgment. In this situation the demurrer should be overruled and after answer a declaration of rights should be entered. Cabell v. City of Cottage Grove, 170 Or. 256, 130 P.2d 1013, 144 A.L.R. 286; Anderson on Declaratory Judgments (Pocket Part of 1946) p. 148.

■ In the present case it is clear to us that the complainant does state a bona fide justiciable controversy which should be settled. Klein v. Jefferson County Building & Loan Ass'n, 239 Ala. 460, 195 So. 593. Accordingly, the court was correct in overruling the demurrer which was to the bill as a whole since the aspect seeking a declaratory judgment presented a ground for relief. Authorities supra.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.